UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HUSCH BLACKWELL LLP | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 18-cv-01213 (APM) |
| | ) |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

This case centers on two dozen Freedom of Information Act ("FOIA") requests made by Plaintiff Husch Blackwell LLP to Defendant United States Environment Protection Agency ("EPA") for communications between certain EPA officials and certain individuals associated with either the International Agency for Research on Cancer ("IARC") or California's Office of Environmental Health Hazard Assessment ("OEHHA"). The sought-after communications concern (1) IARC's conclusion that the herbicide glyphosate was a probable carcinogen and (2) OEHHA's decision to list glyphosate under state Proposition 65 as a chemical known to cause cancer. Plaintiff challenges the adequacy of the EPA's search and its withholding of certain responsive records pursuant to two statutory exceptions. Both parties move for summary judgment.

I.

In October 2017, the EPA received twenty-seven separate but related FOIA requests from Plaintiff. Pl.'s Responses to Def.'s Statement of Undisp. Mat. Facts, ECF No. 29 [hereinafter Pl.'s Resp. to Facts], ¶ 1; *see also* Decl. of Earl Ingram, Jr., ECF No. 22-3 [hereinafter Ingram Decl.],

¶¶ 4–6. The requests fell into three categories. In the first category, consisting of twelve requests, each demand was titled "Certain Agency records re: Communications with [named person] related to [California's] Proposition 65 Listing of Glyphosate." Pl.'s Resp. to Facts ¶ 5; Ingram Decl. ¶ 4. Each request identified a different individual: Allan Hirsch, Carol J. Monahan Cummings, Dana Vogel, David Siegel, Jack Housenger, Jess Rowland, Kurt Straif, Michael Goodis, Neil Anderson, Richard Keigwin, Sam Delson, Susan Villa. *See* Pl.'s Resp. to Facts ¶¶ 5, 8. Six of those individuals—Jess Rowland, Richard Keigwin, Dana Vogel, Neil Anderson, Michael Goodis, and Jack Housenger—were identified as EPA personnel. *Id.* ¶ 12; *see also* Def.'s Mot., Ex. 2, ECF No. 22-5, at 3–6. The twelve requests in the first category were identical insofar as each asked for (1) all email correspondence to or from the named individual containing specified search terms, and (2) "all email, text, or IM correspondence" that contained search terms similar to those specified for the email search. Pl.'s Resp. to Facts ¶¶ 3–5. The defined time frame for the first category of records was from January 1, 2013, through October 31, 2015. *Id.* ¶ 5. The second category of requests, also twelve in number, was identical to the first, except it sought communications from January 1, 2015, through the present. *Id.* ¶¶ 6–8. The third category contained three requests for communications with an additional individual. *Id.* ¶ 9. The three requests in the final category are not at issue in this litigation. *Id.*

About a month after Plaintiffs made the requests, the parties began negotiating search parameters. *See* Def.'s Mot. for Summ. J., ECF No. 22, Ex. 3, ECF No. 22-6 [hereinafter Ex. 3]. Plaintiff proposed two condensed searches. *Id.* at 10. The EPA felt that two searches would "pick up the same emails twice," and suggested combining them into a single search. *Id.* at 8–9. After some additional back and forth, Plaintiff seemingly agreed to the proposed single search. In November 2017, the EPA identified the final search string that it would run, and it also advised

2

that the "individuals that [Plaintiff] identified that are EPA personnel were submitted as Custodians and outside individuals were submitted" as part of the search string. *Id.* at 4. Plaintiff responded, "Thank you for getting this together" and said that it did not have any questions "at the moment." *Id.* at 3.

In December 2017, Defendant began reviewing the documents generated by the search. Ingram Decl. ¶ 20. The agency released some records in full, withheld some altogether, redacted others, and deemed some nonresponsive. *Id*. In March 2018, Plaintiff followed up on the status of its requested documents, and Defendant indicated that additional documents would be released in the next month. *Id.* ¶ 21. That same day, Plaintiff submitted a FOIA appeal. *Id.* ¶ 22. The appeal was granted, Def.'s Mot. for Summ. J., Ex. 5, ECF No. 22-8, and the EPA uploaded additional documents in May 2018, Ingram Decl. ¶¶ 23–24. The documents inadvertently were not released, however, and it was not until July 2018 that Plaintiff received access to the records. *Id.* ¶¶ 24–26. In April 2019, the agency made one last release of materials. *Id.* ¶ 28.

Before the agency's final disclosure, in May 2018, Plaintiff filed suit in this court. Compl., ECF No. 1. After a number of attempts to meet and confer, the parties remained unable to agree on the sufficiency of the production, *see* ECF Nos. 11, 12, 13, 14, 16, 17, and the court set a summary judgment briefing schedule, *see* December 27, 2018 Order, ECF No. 19. The parties filed cross-motions for summary judgment. *See* Mem. of P. & A. in Supp. of Def.'s Mot. for Summ. J., ECF No. 22-1 [hereinafter Def.'s Mot.]; P. & A. in Supp. of Pl.'s Cross-Mot. for Summ. J, ECF No. 26-1 [hereinafter Pl.'s Cross-Mot.]. As part of its briefing, the EPA prepared a *Vaughn* index detailing each withheld record. Def.'s Mot., Ex. 1, ECF No. 22-4 [hereinafter Vaughn Index]. Plaintiff argues that Defendant's search was deficient and that the agency improperly

3

withheld documents pursuant to FOIA Exemptions 5 and 6, while Defendant contends that the search was sufficiently thorough, and all records were properly withheld or redacted.

II.

"[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011). A defendant agency in a FOIA case is entitled to summary judgment if it demonstrates that no material facts are in dispute, that it has conducted an "adequate search," and that all located responsive records have been produced to the plaintiff or are exempt from disclosure. *See Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833, 840 (D.C. Cir. 2001). An "adequate search" is one that is "reasonably calculated to uncover all relevant documents." *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). The agency bears the burden of proving that it performed such a search, and it may rely on sworn affidavits or declarations to do so. *See SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). The court may grant summary judgment to the agency based on this evidence if it is reasonably specific and contradicted by neither record evidence nor evidence of agency bad faith. *See Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *Beltranena v. Clinton*, 770 F. Supp. 2d 175, 181–82 (D.D.C. 2011). A plaintiff can rebut an agency's supporting affidavits and declarations by demonstrating, with "specific facts," that there remains a genuine issue as to whether the agency performed an adequate search for documents responsive to the plaintiff's request. *See Span v. U.S. Dep't of Justice*, 696 F. Supp. 2d 113, 119 (D.D.C. 2010) (quoting *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989)).

The agency also bears the burden of showing that it properly withheld materials pursuant to a statutory exemption. *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*,

746 F.3d 1082, 1088 (D.C. Cir. 2014). An agency may meet its burden "by submitting sufficiently detailed affidavits or declarations, a *Vaughn* index of the withheld documents, or both, to demonstrate that the government has analyzed carefully any material withheld and provided sufficient information as to the applicability of an exemption to enable the adversary system to operate." *Brennan Ctr. for Justice v. Dep't of State*, 296 F. Supp. 3d 73, 80 (D.D.C. 2017).

> If the agency's affidavits provide specific information sufficient to place the documents within the exemption category, if this information is not contradicted in the record, and if there is no evidence in the record of agency bad faith, then summary judgment is appropriate without *in camera* review of the documents.

*ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 626 (D.C. Cir. 2011) (internal quotation marks omitted).

### III.

Plaintiff first challenges the adequacy of the EPA's search. In Plaintiff's view, "[t]he EPA could not have reasonably believed that the search methods it used, including limiting the search to six agency individuals, would produce even a fraction of the requested responsive documents." Pl.'s Cross-Mot. at 9. Plaintiff points to other agency personnel whose inboxes likely contain responsive documents, including individuals identified in the produced documents. *Id.* Despite "overwhelming evidence demonstrating that EPA's initial search was woefully inadequate," Plaintiff argues, "EPA refused to do anything other than search the inboxes of six employees," and it should be required to do a broader and more thorough search with additional custodians. *Id.* at 9–10. At minimum, Plaintiff requests a search of "the inboxes of the additional individuals identified in the documents EPA produced." *Id.* at 10.

The court agrees with Plaintiff that the search was inadequate. As relevant here, Plaintiff made twenty-four related requests for records. Ingram Decl. ¶ 4–5. Each request followed a

5

similar template, asking for "certain agency records re: Communications with" a particular individual relating to defined search terms. *Id.* In total, Plaintiff made two requests for communications as to each of the twelve different individuals. *Id.* Six of those people were identified as EPA personnel; six were not. Pl.'s Resp. to Facts ¶ 12. After lengthy correspondence, EPA and Plaintiff settled on a single string of search terms; that search string included the names of the six non-EPA individuals identified by Plaintiff. *See* Ex. 3 at 3–4, 8–9. The EPA ran this single search across the custodial files of the six EPA personnel identified by Plaintiff. *Id.* at 4.

To understand the inadequacy of the search, picture these requests and the search run as two concentric circles. The larger, outside circle contains all communications between *any* EPA official and the six non-EPA individuals resulting from the applied search string.[1] The smaller, inside circle contains all communications between a subset of EPA personnel—the six named EPA officials/custodians—and the six non-EPA individuals resulting from the applied search string. By running the search string across only the six identified EPA custodians, the agency's search captured the communications within the smaller, inside circle. But what the agency missed is the non-overlapping portion of the concentric circles; that is, by limiting the search to only six custodial files, the agency missed any communications between other agency personnel and the six non-EPA individuals that did not include the six custodians. So, say hypothetically, the EPA Administrator (who is not one of the six custodians) emailed with one of the six non-EPA individuals. The agency's search string would have captured such an email only if one of the six custodians was also a recipient; but if not, then the email would have eluded the search as crafted.

---

[1] EPA included in the search string more names than just the six non-EPA individuals identified by Plaintiff. So, it is conceivable that the search would have turned up communications involving persons other than the six non-EPA individuals. For sake of simplicity, however, the court need not consider that nuance to explain the inadequacy of the search.

6

This is not to say that the agency had to search the custodial files of all EPA personnel to find responsive records. That would be too great a burden. But the agency did have to undertake a reasonable effort to determine which EPA personnel other than the six custodians might have communicated with the six non-EPA persons and to search those additional custodial files. Optimally, the parties would have reached agreement on the universe of relevant custodians. In any event, by limiting the search to the files of only the six identified EPA officials, the agency fell short of its obligation to run searches that would "be reasonably expected to produce the information requested." *Mobley v. CIA*, 806 F.3d 568, 580 (D.C. Cir. 2015) (quoting *Oglesby*, 920 F.2d at 68). Summary judgment is therefore denied as to the agency's search.

IV.

Plaintiff also challenges the EPA's withholding of responsive records pursuant to Exemptions 5 and 6. The court will address each category of documents in turn. Before doing so, the court notes that Plaintiff does not dispute the EPA's withholding of several records pursuant to Exemption 3 and the Federal Insecticide, Fungicide, and Rodenticide Act. *See* Def.'s Mot. at 15–16; *see generally* Pl.'s Cross-Mot. Accordingly, the court grants as conceded the EPA's motion as to Exemption 3.

A.

Plaintiff challenges the withholding, under Exemption 5, of three categories[2] of documents pursuant to the deliberative process privilege: (1) "materials preparing officials for congressional testimony and draft responses to Congress;" (2) "draft question and answer responses in preparation of the release of the registration review of glyphosate and [tetrachlorvinphos];" and (3) "draft web content and news briefs to be published as part of the

---

[2] Plaintiff breaks down the withheld documents into five categories, but the court has condensed them into three categories because they raise the same issues.

7

process of the registration review of glyphosate." *See* Pl.'s Cross-Mot. at 13–18. For the deliberative process privilege to apply, a document must be both "predecisional" and "deliberative." *Loving v. Dep't of Def.*, 550 F.3d 32, 38 (D.C. Cir. 2008); *see also Mapother v. Dep't of Justice*, 3 F.3d 1533, 1537 (D.C. Cir. 1993). Material is "predecisional" if "it was generated before the adoption of an agency policy," and is "deliberative" if "it reflects the give-and-take of the consultative process." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).

Plaintiff argues that the withheld materials are not predecisional. It insists that the material created in preparation for congressional hearings reflects the "EPA's ***past decisions*** regarding the registration of glyphosate, prior published news articles, and the funding of IARC," making them "obviously not pre-decisional because they regarded events and decisions EPA had made in the past." Pl.'s Cross-Motion at 15 (emphasis in original). Similarly, Plaintiff contends that "[b]y the time EPA was preparing the[] Q&A statements, the agency decision pertaining to glyphosate had already been made. Thus, the[] Q&A documents are not deliberative or pre-decisional because they deal with question and answers relating to an already made EPA decision." *Id.* at 15–16. And the draft web content and news briefs "were prepared for the dissemination of information about an upcoming release of an already reached EPA decision, and were not prepared to assist the agency in *arriving at* their decision . . . . As such, they were neither deliberative nor pre-decisional." *Id.* at 16 (emphasis in original). Plaintiff relies heavily on out-of-circuit cases in support of its position. *See* Pl.'s Mot. at 15–20 (citing *Fox News Network, LLC v. U.S. Dep't of the Treasury*, 739 F. Supp. 2d 515, 546 (S.D.N.Y. 2010); *Columbia Riverkeeper v. U.S. Army Corps. of Eng'rs*, 38 F. Supp. 3d 1207, 1220 (D. Or. 2014); *Lucaj v. FBI*, 852 F.3d 541, 547 (6th Cir. 2017)).

The court need not, however, venture outside this District for answers. "Courts in this jurisdiction have repeatedly concluded that talking points prepared for use in congressional testimony are deliberative and predecisional documents subject to FOIA exemption 5." *Judicial Watch, Inc. v. U.S. Dep't of State*, 306 F. Supp. 3d 97, 115 (D.D.C. 2018) (collecting cases); *see also Comm. on Oversight and Gov't Reform, U.S. House of Representatives v. Lynch*, 156 F. Supp. 3d 101, 112 (D.D.C. 2016) ("Following the same reasoning [as previous decisions from this District], the Court holds that documents withheld by defendant that reveal the Department's internal deliberations about how to respond to press and Congressional inquiries . . . are protected by the deliberative process privilege."). The same is true of talking points and deliberations about press inquiries or public statements by an agency. As one court observed, "the overwhelming consensus among judges in this District is that the privilege protects agency deliberations about public statements, including the use of talking points." *Am. Ctr. for Law and Justice v. U.S. Dep't of Justice*, 325 F. Supp. 3d 162, 171–72 (D.D.C. 2018). The court found that conclusion "inescapable," for

> [i]f agency deliberations about public statements were FOIA-able then agencies would be hamstrung in their dealings with the press, defeating the very transparency FOIA aims to foster. Nonetheless . . . , agencies must provide context about the particular press-related deliberations at issue and cannot rely solely on conclusory labels.

*Id.* (citations omitted). Similarly, this court has previously held that "[p]redecisional documents include those 'generated as part of a continuous process of agency decision making, viz., how to respond to ongoing inquiries' . . . Accordingly, 'courts have generally found that documents created in anticipation of press inquiries are protected.'" *Am. Ctr. for Law & Justice v. U.S. Dep't of Justice*, 334 F. Supp. 3d 13, 21 (2018) (citations omitted); *see also Judicial Watch, Inc. v. Reno*, No. Civ. A 00-0723 (JR), 2001 WL 1902811, at *3 (D.D.C. March 30, 2001) (noting that while

9

the deliberative process privilege does not cover explanations of agency action, such as might be contained in press releases, "it does extend to recommendations and decisions concerning the sort of continuing and follow-up issues" such as "how to handle press inquiries and other public relations issues").

The court has reviewed the *Vaughn* index descriptions and is satisfied that they establish that the records in question were properly withheld pursuant to the deliberative process privilege in light of the foregoing authorities. Summary judgment is therefore granted in favor of the EPA as to these records.

B.

The EPA also invokes the attorney-client privilege as a basis for additional withholdings under Exemption 5; the court reaches a different conclusion as to these records. Plaintiff challenges the EPA's withholding of Entry 84,[3] an email chain, portions of which were withheld because it "comprise[s] confidential communications between an [Office of General Counsel] attorney and his [Office of Chemical Safety and Pollution Prevention, EPA ("OCSPP")] and [Office of the Administrator, EPA] clients which relate to the reporter's request regarding matters in litigation as well as other issues related to glyphosate." Vaughn Index at 94. The EPA further explains that "[t]he OCSPP client supplied specific information for the purpose of seeking legal advice from its attorney, and the attorney provided his advice. These portions of the emails are confidential and were only shared with those in EPA who had a need to know." *Id.* Plaintiff argues that "EPA's explanation under attorney-client privilege fails to describe with sufficient particularity any legal issues purportedly being discussed." Pl.'s Cross-Mot. at 21. The court agrees.

---

[3] Entry 85 is a duplicate of Entry 84, portions of which were also withheld pursuant to the attorney-client privilege. *See* Vaughn Index at 94; *see also* Def.'s Mot. at 20.

To establish the attorney-client privilege in the FOIA context, "an agency must show that (1) the information in the documents was communicated to or by an attorney as part of a professional relationship, (2) the information is confidential, and (3) the communication is based on confidential information provided by the client." *Ctr. For Biological Diversity v. U.S. Envtl. Prot. Agency*, 279 F. Supp. 3d 121, 146 (D.D.C. 2017) (cleaned up) (quoting *Mead Data Ctr., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 253–54 (D.C. Cir. 1977)). At a minimum, the agency must: "(1) describe with sufficient particularity the nature of the legal issue or issues for which advice was sought; (2) explain whether the communications sought legal advice, conveyed legal advice, or both; and (3) provide evidence that the communications were confidential." *Id.* at 152–53 (citing *Coastal States Gas Corp.*, 617 F.2d at 862).

With respect to the withheld portions of Entry 84, the EPA has failed to state "with sufficient particularity" the nature of the legal issues or legal advice sought. The agency does not, for instance, explain how the communication conveyed or sought *legal* advice about the ongoing litigation, particularly in the context of a press inquiry. Accordingly, Defendant's Motion is denied as to the two records withheld pursuant to the attorney-client privilege. Defendant may renew its motion for summary judgment by submitting a supplemental declaration to the court which explains the nature of the legal advice conveyed or sought.

C.

Plaintiff also challenges the withholding of portions of a single record pursuant to Exemption 6, which exempts from disclosure "personnel and medical files and similar files the disclosure of which could constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Plaintiff contests the EPA's redaction of Entry 83,[4] *see* Pl.'s Cross-Mot. at

---

[4] Plaintiff does not dispute the withholding of entries 21, 22, 23, 24, 29, 37, 43, 47, 48, 50, 51, 55, 56, 58, 59, 60, 61, 70, and 78, portions of which were also withheld pursuant to Exemption 6. Pl.'s Cross-Mot. at 22 n.10.

23–25, which is an email between an EPA employee and "a personal acquaintance or family member," Vaughn Index at 92. The EPA asserts that the redacted portions are exempt under the "similar files" exception. "The withheld portion of the email contains a purely personal discussion with a personal acquaintance or family member as well that third party's personal email address, the disclosure of which," the EPA argues, "would constitute a clearly unwarranted invasion of personal privacy." *Id.* The *Vaughn* index further details that the withheld portion of the email "is an intimate conversation, release of which could potentially be embarrassing to the employee" and "[t]he withheld information does not shed light on the employee's performance of official duties," nor is there a "public interest in the non-EPA third party's contact information." *Id.* Plaintiff, on the other hand, contends that the content of the email was "unlawfully" withheld because it likely contains responsive information, especially given that the email attachment (which has been released in full) was relevant to Plaintiff's FOIA request. *See* Pl.'s Cross-Mot. at 23–24. Plaintiff also argues that the EPA should not have redacted the third party's entire email address, but instead should have redacted only the domain extension so that Plaintiff could have identified the individual. *Id.* at 24.

"The Supreme Court has interpreted the phrase 'similar files' to include all information that applies to a particular individual." *Lepelletier v. F.D.I.C.*, 164 F.3d 37, 46 (D.C. Cir. 1999) (citing *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982)). When deciding whether Exemption 6 applies, courts "must weigh the 'privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, the disclosure would work a clearly unwarranted invasion of personal privacy.'" *Id.* (quoting *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989)). "The only relevant public interest in the FOIA balancing analysis is the extent to which disclosure of the information sought

would 'shed light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *Id.* (cleaned up) (quoting *Dep't of Defense v. FLRA*, 510 U.S. 487, 497 (1994)). "Information that 'reveals little or nothing about an agency's own conduct' does not further the statutory purpose; thus the public has no cognizable interest in the release of such information." *Beck v. Dep't of Justice*, 997 F.2d 1489, 1493 (citation omitted).

In this case, the court agrees with the EPA that the potential harm and embarrassment to the EPA employee of releasing "an intimate [email] conversation" outweighs any public interest in the email content, given that the email "does not shed light on the employee's performance of official duties." Vaughn Index at 92; *see also* Reply in Support of Def.'s Mot., ECF No. 31, at 15–17. This is especially true given that the substantive email attachment has been released to Plaintiff in full. Vaughn Index at 92. The court also agrees that there is no public interest in the third party's contact information, given that the email exchange was of a personal nature. *See id.* In fact, the EPA did release a portion of the email address reading "arthursellakum," while redacting the rest of the address "to allow Plaintiff some information about who the person is without violating the individual's privacy," *id.* at 16, or causing "unsolicited communications or harassment," Ingram Decl. ¶ 49. The court agrees that releasing the individual's full email address would constitute an unwarranted invasion of privacy. The court grants summary judgment to Defendant as to the withheld portions of Entry 83, as well as all uncontested withholdings of records or portions of records pursuant to Exemption 6.

D.

Finally, the court addresses Plaintiff's argument that, with regard to all of the withheld documents, the "EPA unlawfully failed to produce those portions of documents that are non-exempt" and provided an insufficient segregability analysis. Pl.'s Cross-Mot. at 25–26. FOIA

13

requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b). For an agency to meet its segregability burden of proof, it must submit an affidavit affirming that the agency performed a "line-by-line segregability review." *Rosenberg v. U.S. Dep't of Defense*, 342 F. Supp. 3d 62, 96 (D.D.C. 2018) (quoting *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 160 F. Supp. 3d 226, 245 (D.D.C. 2016)); *see also Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776–77 (D.C. Cir. 2002). The court is satisfied that the EPA performed such a review here.

The EPA provided a detailed *Vaughn* index, describing the individual documents or portions withheld and offering a segregability analysis as to each set of withholdings. *See generally* Vaughn Index. Further, the EPA supplied the court with a declaration from Earl Ingram, Jr., the Chief of the Public Information and Records Integrity Branch within the Information Technology and Resources Management Division of the Office of Pesticide Programs at EPA Headquarters. Ingram Decl., ¶ 1. Ingram affirms that "EPA staff also conducted a review of each responsive records for segregability of non-exempt material." *Id.* ¶ 29. They then "performed redactions where non-exempt material could be reasonably segregated and released non-exempt portions." *Id.* Accordingly, "EPA has released all reasonably segregable, non-exempt information to Husch Blackwell. The documents withheld in their entirety contain no meaningful portion that could be redacted and released." *Id.* The EPA has met its burden of demonstrating that it segregated all non-exempt material from withheld documents.

V.

For the foregoing reasons, the court grants in part and denies in part the EPA's Motion for Summary Judgment, ECF No. 22, and denies Plaintiff's Cross-Motion for Summary Judgment, ECF No. 26. Specifically. the court rules as follows:

1. Defendant's Motion is denied as to the adequacy of its search.

2. Defendant's Motion is granted as to as to withholdings under Exemption 3.

3. Defendant's Motion is granted in part as to the Exemption 5 withholdings. Records created in preparation for congressional testimony and press inquiries and draft web content and news briefs were properly withheld pursuant to the deliberative process privilege; however, the court finds Defendant's explanations as to the documents withheld under the attorney-client privilege wanting. Defendant may submit a supplemental declaration, which details the nature of the legal advice.

4. Defendant's Motion is granted as to its Exemption 6 withholdings.

5. The parties shall file a Joint Status Report by March 13, 2020, which updates the court on Defendant's additional search efforts and proposes a schedule for further proceedings, if necessary.

Dated: February 12, 2020

Amit P. Mehta
United States District Judge